IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPHINE McNEAL, Administrator
of the Estate of James McNeal, Jr.,
As Next Friend,

        Plaintiff,

        vs.

KARL ZOBRIST, in his official
capacity as Board President of The
Board of Police Commissioners of
Kansas City, Missouri, et al.,

        Defendants.

CIVIL ACTION
No. 04-2149-GTV

## MEMORANDUM AND ORDER

Plaintiff Josephine McNeal, as administrator of the estate of James McNeal, Jr., brings this action pursuant to 42 U.S.C. § 1983 against Defendants Karl Zobrist, Javier M. Perez, Angela Wasson-Hunt, James Wilson, and Kay Barnes, in their official capacities as members of the Board of Police Commissioners of Kansas City, Missouri, and against Defendants Chris Praschak, Roy True, and James Rubenstein, officers of the Kansas City, Missouri Police Department. Plaintiff's Second Amended Complaint contains five counts. Specifically, Plaintiff claims that: Defendant Praschak used excessive force against James McNeal, Jr. in violation of the Fourth Amendment; Defendant Praschak subjected James McNeal, Jr. to an unreasonable bodily intrusion in violation of the Fourth Amendment; the individual members of the Board of Police Commissioners,

pursuant to official policy, custom, and practice, failed to instruct, supervise, control and discipline Defendant Praschak and Officer John Pickens in violation of James McNeal, Jr.'s constitutional rights; and Defendants Roy True and James Rubenstein failed to properly supervise Defendant Praschak and Officer Pickens in the performance of their duties, depriving James McNeal, Jr. of his right to be free from an unreasonable seizure of his person and from the use of excessive force, all in violation of the Fourth Amendment.

This action is before the court on the individual members of the Board of Police Commissioners' (collectively "the Board members") motion to dismiss (Doc. 35). The Board members asserts two grounds for dismissal: (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (2) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the court denies the Board members' motion to dismiss.

### **I. Factual Background**

The following facts are taken from the allegations contained in Plaintiff's Second Amended Complaint.

On January 5, 2003, Chris Praschak and John Pickens, officers of the Kansas City, Missouri Police Department, followed the deceased, James McNeal, Jr., and two others riding in a sports utility vehicle in the midtown area of Kansas City, Missouri. Plaintiff alleges that without legal authority, justification or cause, Officers Praschak and Pickens chased the sports utility vehicle into Kansas City, Kansas. Eventually, the vehicle stopped. The two passengers riding with James McNeal, Jr. left on foot because they were the subjects of outstanding warrants and did not want to be arrested. Plaintiff further alleges that James McNeal, Jr. remained in the vehicle and

cooperated with the police officers. At some point, a shooting occurred and James McNeal, Jr. suffered two gun shot wounds. He died later that day. Plaintiff asserts that at no point did Officers Praschak and Pickens activate their emergency lights or siren, turn on the video system in their police car, or contact officers of the Kansas City, Kansas Police Department for assistance. Plaintiff also claims that Captain Roy True and Sergeant James Rubenstein closely monitored the situation, but that they failed to properly supervise their subordinates.

Count three of Plaintiff's Second Amended Complaint alleges that the Board members, pursuant to official policy or custom, knowingly and intentionally failed to instruct, supervise, control, and discipline Officers Praschak and Pickens in the performance of their duties. In particular, Plaintiff alleges that these duties included refraining from: unlawfully assaulting a citizen with a deadly weapon, or otherwise using excessive force before, during, and after an arrest; unlawfully using deadly force in situations that can be controlled by other means; and denying detained individuals immediate medical attention for injuries. In sum, Plaintiff claims that Officers Praschak and Pickens acted under the direction and control of the Board members' official policies or customs, and thus, the Board members' official policies and customs were the moving force behind the constitutional deprivations of James McNeal, Jr.

## **II.  Personal Jurisdiction**

### A.  Standard of Review

The Board members first request the court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2). In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d

3

1086, 1091 (10th Cir. 1998) (citation omitted). Where, as here, the court does not hold an evidentiary hearing, and the motion rests on the plaintiff's complaint and affidavits submitted by the parties, the plaintiff need only make a prima facie showing of personal jurisdiction. Id. (citation omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (further citation omitted).

Plaintiff's Second Amended Complaint does not state a basis for subject matter jurisdiction. Because Plaintiff asserts claims under 42 U.S.C. § 1983, the court has original jurisdiction pursuant to 28 U.S.C. § 1331.[1] "'Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'" Peay v. Bellsouth Med. Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997)). Because § 1983 does not authorize nationwide service of process, Scherer v. Curators of Univ. of Mo., 152 F. Supp. 2d 1278, 1281 (D. Kan. 2001) (citing McChan v. Perry, No. 00-2053, 2000 WL

---

[1]   Based on the allegations in Plaintiff's Second Amended Complaint, it also appears that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

4

1234844, at *1 (10th Cir. Aug. 31, 2000)), personal jurisdiction must be established under the Kansas long-arm statute. Rainy Day Books, Inc. v. Rainy Day Books & Café, L.L.C., 186 F. Supp. 2d 1158, 1161 (D. Kan. 2002) (citations omitted).

In Kansas, analyzing a motion to dismiss for lack of personal jurisdiction involves an inquiry as to: (1) whether the court has personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b); and (2) whether the exercise of such jurisdiction comports with due process. Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304 (10th Cir. 1994). However, "these inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." Flannagan v. Bader, 905 F. Supp. 933, 936 (D. Kan. 1995) (citing Thompson v. Chambers, 804 F. Supp. 188, 195 (D. Kan. 1992)). The court, therefore, proceeds directly to the constitutional issue. Federated Rural Elec. Ins. Corp., 17 F.3d at 1304.[2]

The due process clause permits the exercise of jurisdiction over a nonresident defendant "so long as there exist 'minimum contacts' between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting Int'l Shoe Co. v.

---

[2] Because subject matter jurisdiction over Plaintiff's action is predicated on a federal question, rather than the diversity of the parties, the court's due process analysis focuses on the Fifth Amendment, and not the Fourteenth Amendment. Peay, 205 F.3d at 1210. As a practical matter, however, the inquiry is the same as courts have applied the Fourteenth Amendment's "minimum contacts" analysis to federal question cases. Rainy Day Books, Inc., 186 F. Supp. 2d at 1161; Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp. 2d 1074, 1077 (D. Kan. 1998).

Washington, 326 U.S. 310, 316 (1945)). The "minimum contacts" standard may be established by specific jurisdiction. In OMI Holdings, Inc., the Tenth Circuit explained the requirements for establishing specific jurisdiction as follows:

> Our specific jurisdiction inquiry is two-fold. First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, Burger King Corp., 471 U.S. at 472, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 109 (1987) (internal quotations omitted) (emphasis in the original). Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." Id. at 113. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. See id.

149 F.3d at 1091.

A court may maintain general jurisdiction over a defendant based on the defendant's general business contacts with the state. Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 (1984)). General jurisdiction exists when the defendant's contacts with the forum state are so systematic and continuous that the court may exercise jurisdiction over the defendant even though the claims at issue are unrelated to the defendant's contacts with the state. Id. (citation omitted).

## B. Discussion

The Board members advance several arguments in support of their position that personal jurisdiction does not exist in the District of Kansas. First, the Board members assert that they

6

have no connection to Kansas in their official capacities. The Board members point out that pursuant to Missouri Revised Statute §§ 84.350.1 and 84.420, they are required to be residents of Missouri and are only empowered to act in Kansas City, Missouri. Second, the Board members maintain that Plaintiff's complaint fails to allege that they participated in any unconstitutional conduct in Kansas that would provide a basis for personal jurisdiction. Instead, they maintain that all of their allegedly tortious supervision occurred in Missouri. The Board members argue, citing the Tenth Circuit's decision in Taylor v. Phelan, 912 F.2d 429, 434 (10th Cir. 1990), that the conduct of Defendant Praschak and Officer Pickens in Kansas does not provide personal jurisdiction over them in a § 1983 claim based on respondeat superior. Finally, the Board members contend that Plaintiff cannot satisfy due process requirements by establishing that they purposely directed their activities in Kansas or that they had continuous and systematic contacts with the state.

Plaintiff responds that personal jurisdiction is proper over the Board members pursuant to the Kansas long-arm statute, K.S.A. § 60-308(b)(2), which provides personal jurisdiction over any person who commits "a tortious act" within Kansas. See Ling v. Jan's Liquors, 703 P.2d 731, 734 (Kan. 1985) (holding that "under the provisions of K.S.A. 60-308(b)(2), it is possible to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside the state"). Plaintiff argues that the Board members' "tortious act of failing to supervise" occurred in Missouri, which ultimately led to James McNeal, Jr.'s death in Kansas. Thus, Plaintiff claims that an affirmative link exists between James McNeal Jr.'s death and the Board members' failure to supervise, i.e., if the Board members had properly supervised

7

Defendant Praschak and Officer Pickens, then the officers would not have crossed over to Kansas, made an illegal stop, and shot James McNeal, Jr.  Furthermore, Plaintiff states that the Board members knew or should have known that their officers routinely cross over the Kansas-Missouri state line in pursuit of violators.  Finally, Plaintiff argues that the exercise of personal jurisdiction over the Board members comports with due process.

The Tenth Circuit's decision in Taylor v. Phelan provides direction for this court's personal jurisdiction determination.  In Taylor, the plaintiffs sued Detective Paula Phelan of the Kansas City, Missouri, Police Department and the Kansas City, Missouri Board of Police Commissioners.  912 F.2d 429, 430 (10th Cir. 1990).  Detective Phelan had investigated a sexual assault crime against the plaintiffs' daughter that occurred in Kansas City, Missouri.  Id.  During the investigation, Detective Phelan made several phone calls to the plaintiffs' home in Kansas City, Kansas.  Id.  At one point, Detective Phelan and Detective Wessler, an individual not named in the suit, visited the plaintiffs' home to assure them that a warrant would be issued for the suspect's arrest and that the plaintiffs and their family would be safe from harm.  Id.  Eventually, Detective Wessler telephoned the suspect, informing the suspect that a warrant had been issued for his arrest.  Id. at 431.  The suspect indicated to Detective Wessler that he would voluntarily surrender the next day.  Id.  Instead, the suspect broke into the plaintiffs' home, killing the plaintiffs' daughter, and severely injuring both plaintiffs and their son.  Id.

The district court dismissed the plaintiffs' claims under § 1983 and the Kansas Tort Claims Act ("KTCA") on the basis of lack of personal jurisdiction.  Id. at 430-31.  Relying on K.S.A. § 60-308(b)(2) and the Kansas Supreme Court's decision in Ling v. Jan's Liquors, 703 P.2d 731, 734

(Kan. 1985), the district court first concluded that the Kansas long-arm statute applied to the defendants actions because their alleged negligence in Missouri contributed to the plaintiffs' injuries in Kansas.  Id. at 432.  The Tenth Circuit affirmed this determination.  Id.  The district court, however, also concluded that the exercise of jurisdiction over the defendants did not satisfy due process requirements.  Id.  The Tenth Circuit reversed this determination, concluding that the district court improperly focused on the assailant's role in Kansas, rather than the defendants' conduct in Kansas that resulted or contributed to the plaintiffs' injuries.  Id. at 432-33.  In particular, the Tenth Circuit cited Detective Phelan's assurance to plaintiffs, in their Kansas residence, that they would be safe from harm as a basis for exercising personal jurisdiction over Detective Phelan.  Id. at 433.  Equally important, the Tenth Circuit concluded that personal jurisdiction existed over the Kansas City, Missouri Board of Police Commissioners based on the activities of Detective Phelan and Detective Wessler that occurred in Kansas.  Id.  Specifically, the Tenth Circuit reasoned:

> Under the theory of respondeat superior, a principal is liable for the acts of an agent when those acts are committed in the course of or within the scope of the agent's employment.  Following that theory, it is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state.  Accordingly, we hold that the district court in Kansas can constitutionally exercise jurisdiction over the Board based on the acts of its agents.

Id. at 433-34 (internal citations omitted).  In a footnote, the Tenth Circuit recognized "that the principal of respondeat superior . . . [would] not apply to implicate the Board . . . under 42 U.S.C. § 1983 . . . ."  Id. at 434 n.5 (citations omitted).  On the other hand, the Tenth Circuit observed that the Kansas City, Missouri Board of Police Commissioners could be held liable for the acts of its

9

agents under the KTCA. Id.[3]

After reviewing the allegations in Plaintiff's Second Amended Complaint, the court concludes that the exercise of personal jurisdiction over the Board members comports with due process considerations. Plaintiff alleges that the Board members are personally responsible for failing to train and supervise Defendant Praschak and Officer Pickens, which resulted in James McNeal, Jr.'s death in Kansas. While the alleged failure to train and supervise by the Board members presumably occurred in Missouri, it is foreseeable that the consequences of such alleged failure would follow the police officers of the Kansas City, Missouri Police Department wherever they performed their duties. Kansas City is unique in that it is divided between two states, so although the Board members may not have purposely directed their activities toward Kansas, the court determines that the Board members could reasonably expect to be haled into Kansas courts because of their officers' activities.

In Taylor, utilizing the respondeat superior principle, the Tenth Circuit held that the Kansas City, Missouri Board of Police Commissioners could be subject to personal jurisdiction based on the torts that its agents allegedly committed in Kansas  Id. at 434. The Tenth Circuit also observed that the Kansas City, Missouri Board of Police Commissioners could not be held liable on the basis of the respondeat superior doctrine under § 1983. Id. at 434 n.5. Arguably, it is inconsistent to hold that personal jurisdiction over the Board members can be based on Defendant

---

[3]   The KTCA provides that "a governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. § 75-6103(a).

Praschak's and Officer Pickens' conduct in Kansas when the Board members may not be held liable on the basis of respondeat superior. The court, however, is also mindful that allegations that a municipality failed to train its employees serve as a substitute for the respondeat superior doctrine as a basis for imposing liability under § 1983. A fine line exists between holding a municipality liable under a respondeat superior theory versus a failure to train theory. Only a plaintiff's ability to satisfy the higher standards of fault and causation prevents a failure to train claim from collapsing into respondeat superior liability. See City of Canton v. Harris, 489 U.S. 378, 391-92 (1989) (determining that de facto respondeat superior liability would be imposed on municipalities if a plaintiff was not required to meet higher standards of fault and causation in a failure to train claim). Here, the court concludes that the Board members are subject to jurisdiction in Kansas because the torts their agents allegedly committed occurred as a result of the Board members' failure to train their police officers. Accordingly, the Board members' motion to dismiss on the basis of personal jurisdiction is denied.

### III.  Failure to State a Claim

#### A.  Standard of Review

In the alternative, the Board members argue that Plaintiff fails to state a § 1983 claim against them.[4]

---

[4]  Plaintiff's response brief discusses the supervisor that closely monitored the pursuit, presumably Defendant True or Defendant Rubenstein. Plaintiff's brief correctly notes that a supervisor may only be held liable under § 1983 if an "'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of or control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993) (citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)). Attaching a

A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling him to relief under his theory of recovery. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. Id.; Fed. R. Civ. P. 8(f). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).

### B. Discussion

The Board members argue that Plaintiff's § 1983 claim fails because it is based on respondeat theory liability, Plaintiff fails to allege that they were deliberately indifferent to the constitutional rights of James McNeal, Jr., and that Plaintiff fails to allege enough to hold the them liable for a single incident. The court disagrees.

Because Plaintiff's § 1983 suit is against the Board members in their official capacities, it must be treated as a suit against the municipality. Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 905 (8th Cir. 1999); see Watson v. Kansas City, Kan., 857 F.2d 690, 695 (10th Cir. 1988) (citations omitted) ("A suit against a municipal and a suit against a municipal official acting

---

memorandum from the Kansas City, Missouri Police Department's chief of police describing the incident, Plaintiff argues that the supervisor personally participated in the unconstitutional conduct. Because the present motion only seeks to dismiss the Board members, the court will not address any argument pertaining to Defendant True or Defendant Rubenstein.

in his or her official capacity are the same."). Under § 1983, a municipality may not be held liable under a theory of respondeat superior. Monell v. Dept' of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, the United States Supreme Court requires "a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citations omitted). Moreover, the Supreme Court has cautioned:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Id. at 404 (emphasis in original). Thus, the Supreme Court deemed higher standards of fault and causation necessary to prevent municipalities from being subject to de facto respondeat superior liability. City of Canton, 489 U.S. at 391-92. Finally, "[i]n the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996)(citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-85 (1986)).

The court concludes that Plaintiff's Second Amended Complaint states a § 1983 claim against the Board members. Although not set forth with precision, Plaintiff alleges that the Board members, pursuant to official policy or custom, intentionally and with deliberate indifference failed to instruct and supervise Defendant Praschak and Officer Pickens in the use of deadly force.

See City of Canton, 489 U.S. at 390 n.10 (recognizing that the need to train officers in the use of deadly force is so obvious that the failure to do so could be characterized as deliberate indifference sufficient to impose municipal liability); Carr v. Castle, 337 F.3d 1221, 1228 (10th Cir. 2003) (reciting the requirements a plaintiff must show to prevail on a claim that a municipality failed to train its officers in the use of force).  A motion to dismiss is not the proper device to determine whether Plaintiff can satisfy the higher standards of proof necessary to hold a municipality liable under § 1983.  At this stage of the litigation, Plaintiff may pursue a § 1983 failure to train claim against the Board members.  Accordingly, the Board members' motion to dismiss on this basis is denied.

### IV.  Previously Dismissed Outrage Claim

On July 8, 2004, this court dismissed Plaintiff's state law outrage claim.  Following Moore v. Luther, 291 F. Supp. 2d 1194, 1998 (D. Kan. 2003), this court held that a one-year statute of limitations period governed claims of outrage in Kansas.  Because Plaintiff's outrage claim accrued on January 5, 2003, the date that James McNeal, Jr. died, and Plaintiff did not file the complaint until March 8, 2004, the court concluded that Plaintiff's claim was time-barred.  Since that decision, the Kansas Supreme Court has held that claims for outrage are subject to a two-year statute of limitations.  Hallam v. Mercy Health Ctr. of Manhattan, Inc., 97 P.3d 492, 497 (Kan. 2004).  Accordingly, the court reverses its prior ruling that Plaintiff's outrage claim is barred by the statute of limitations.  Plaintiff may file an amended complaint within ten days of the date of this order to add a claim of outrage.

IT IS, THEREFORE, BY THE COURT ORDERED that the Board members' motion to

dismiss (Doc. 35) is denied.

IT IS FURTHER ORDERED that Plaintiff may file an amended complaint within ten days of the date of this order to add a claim of outrage.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 18th day of April 2005.

<pre>
                                    /s/ G.T. VanBebber
                                    G. Thomas VanBebber
                                    United States Senior District Judge
</pre>