## IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | |
|---|---|
| **Josephine NcNeal, Administrator of the Estate of** | ) |
| **James McNeal, Jr., As Next Friend,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )Case No. 04-CV-2149GTV |
| | ) |
| **Board of Police Commissioners,** | ) |
| **Karl Zobrist, in his official** | ) |
| **Capacity as Board President of The Board of** | ) |
| **Police Commissioners of Kansas City, Missouri, et. al.** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S SUGGESTIONS IN SUPPORT OF MOTION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, by and through counsel, and moves this court for an order denying Defendants' Motion for Summary Judgment. In support, thereof, Plaintiff offers the following suggestions:

### STATEMENT OF MATERIAL FACTS

1. Plaintiff Josephine McNeal is the administrator of the estate of James McNeal Jr., as Next Friend; Josephine McNeal is a resident of the state of Kansas. *Pretrial Order*.

2. Karl Zobrist, Javier Perez, Angela Wasson-Hunt, James Wilson and Mayor Kay Barnes are current or former members of the Missouri Board of Police Commissioners and are sued in their official capacity. *Pretrial Order*.

3. Defendant Christopher Praschak is a resident of the state of Missouri and a police officer of the Kansas City Missouri Police Department.

4. Officer Pickens was an individually named defendant in Plaintiff's first and second amended petition, and later dismissed by the court in *ECF document number 44*.

5. On January 5th, 2003, officers Pickens and Praschak were Missouri police officers under the authority of the Board of Police Commissioners. *Pretrial Order; Deposition Rubenstein; Deposition Praschak; Deposition Pickens*.

6. Officer Pickens may have had a Glock 22 firearm on January 5, 2003. *Praschak depo. p. 131*.

7. The stipulated allegation is that "the officers **state** that they followed the SUV because **they** saw it swerve." *Praschak depo., p.55; Pickens depo., p.65; controverted by Bates depo., p. 117*.

8. "James McNeal, Jr. was the driver of the SUV" which had just departed from Taco Bell. *Pretrial Order Stip 4*.

9. Defendant's paragraph 9 controverted by *Bates depo., p. 115*.

10. The stipulated allegation is that McNeal, Bates and others had been at Standford & Sons with friends. *Pre-Trial Order Stip 8*.

11. The autopsy report using a Standard Urine Screen test for barbiturates, benzodiazepines, cocaine metabolites, methamphetamine opiates and phencyclidine were negative, but McNeal had alcohol and THC in his system. *Kansas Bureau Investigation Toxicology Report; DEF0043/49*.

12. The stipulated allegation is that on January 5, 2003, at approximately 2:00 a.m., defendant Praschak and his partner, Officer John Pickens, followed

      James McNeal, Jr. ((McNeal) and others in a sport utility vehicle on I-35 near Broadway in Kansas City, Missouri. *Pre-trial Order Stip.4.*

13. McNeal, whose identity was not known during the shooting, had an active warrant for alleged probation or parole violations. (*Pre-trial Order Stip. 11*).

14. Officer lights and sirens were on and the car chase was already in pursuit when the police in-camera video commenced. (*in-camera video taken from crn 03-115358*)

15. The stipulated allegation is that the occupants of the SUV admitted to Josephine McNeal that they were trying to get away from the police. (*Pre-trial Order Stip.13).*

16. Officer Pickens radioed dispatch and continued the pursuit into the state of Kansas. (*Pre-Trial Order Stip. 16).*

17. The officers pursued the SUV from Kansas City, Missouri into Kansas City, Kansas. (*in-camera video crn 03-115358*).

18. "Officer Pickens radioed dispatch to arrange for help from the Kansas City, Kansas police Department" who did not respond. (*Pre-Trial Order Stip. 17).*

19. "The officers' sergeant, James Rubenstein, similarly requested that the dispatcher call for help from the Kansas City, Kansas Police Department" who did not respond. (*Pretrial Order Stip. 18).*

20. "The Kansas City, Missouri dispatcher called for help from the Kansas City, Kansas police department" who did not respond. (*Pretrial Order Stip 19*; *Rubenstein depo p.48;7*).

3

*21.*  Rubenstein, the controlling Kansas City Police Department supervisor, allowed the officers to continue the pursuit. *Rubenstein Depo p.8.*

22.  "Sergeant James Rubenstein was the controlling supervisor", acting under authority of the Kansas City Police Department and the Board of Police Commissioners during the pursuit of McNeal. (*Pretrial Order Stip 21*).

23.  Defendant Praschak and Officer Pickens continued to follow the SUV to approximately 34th Street and Haskell Avenue in Kansas City, Kansas. (*Pretrial Order*).

24.  The SUV stopped and the occupants of the Explorer bailed out and began to run away on foot. (*Pretrial Order Stip 24*).

25.  The stipulated allegation is "Defendant Praschak ran after and attempted to arrest McNeal" before his identity was known. (*Pretrial Order Stip. 25*).

26.  The stipulated allegation is that "Officer Pickens ran after the two passengers". Pretrial Order Stip 26.

27.  McNeal slipped and fell as he exited the sports utility vehicle. Bates Depo. p.77.

28.  Defendant's paragraph 28 uncontroverted.

29.  Defendant's paragraph 29 controverted. McNeal was trying to get away from the officers.  Bates Depo., pg 93.

30.  Defendant's paragraph 30 controverted:  Only two quick shots were heard.  Bates depo p. 77.

31.  Defendant's paragraph 31 controverted. (*Bates Depo. p. 77*).

*32.*  Defendant's paragraph 32 controverted.  *(Bates Depo. p. 77).*

4

33. Defendant's paragraph 33 controverted:  Only two quick shots were heard. (*Bates depo p.77*).

34. Defendant's paragraph 34 controverted:  Officer Pickens never stated that he observed decedent with any weapon. *(Deposition of Officer Pickens*; *Pretrial Order Stip 34)*.

35. Defendant's paragraph 35 controverted.  The school yard was illuminated by street lamps.  (*Bates Deposition p. 64;15)*.

36. Defendant's paragraph 36 uncontroverted.  Officer Pickens then "screamed back to my partner if he was ok. At that point I saw him up off the ground running towards me. *(Pretrial Order Stip. 36).*

37. Defendant's paragraph 37 controverted. *(Bates Deposition ).*

38. Defendant's paragraph 38 controverted.

39. Defendant's paragraph 39 uncontroverted.

40. Defendant's paragraph 40 uncontroverted.

41. Defendant's paragraph 41 controverted.  James McNeal died at approximately Coroners Report KBI.

42. Defendant's paragraph 42 controverted. Bates did not observe McNeal get shot, but hear two shots fired. *(Bates deposition at p.77)*.

43. Defendant's paragraph 43 uncontroverted.

44. Defendant's paragraph 44 controverted.

45. Defendant's paragraph 45 uncontroverted.

46. Defendant's paragraph 46 controverted. Item Q-1, taken from decedent's body, and examined by Dr. Lee was from a Smith & Wesson 40 Caliber, not a Glock. *(Dr. Susan Lee Depo at p.19).*

47. Defendant's paragraph 47 uncontroverted.

## STANDARD OF REVIEW

Summary Judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law; the trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. **Morgan v. City of Wichita**, 80 P.3d 407, Kan. App. (2003). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may reasonably be drawn from the evidence. **Matsushita Electric Indus. Co. V. Zenith Radio Corp**., 475 U.S. 574, 588-89 (1986). Plaintiff "may not [merely] rest upon the denials of the… pleadings, but… by affidavits or as otherwise provided in rule 56, must set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56 (e).   A local governmental entity is liable for damages under Sections 1981 and 1983 only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. **Monell v. Department of Social Serv**., 436 U.S. 658, 692 (1978). Unconstitutional policies or customs can take three forms: an express policy that, when enforced, causes a constitutional deprivation; a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well

6

settled as to constitute a usage or custom with the force of law; or an allegation that the constitutional injury was caused by a person with final policy-making authority. **Brokaw v. Mercer County,** 235 F.3d 1000, 1013 (7th Cir. 2000).

## GENUINE ISSUES OF MATERIAL FACT EXIST

Defendants correctly assert that Plaintiff must set forth specific facts showing that genuine issues are present for trial. **Anderson v. Livery Lobby, Inc.**, 477 U.S. 242, 248 (1986). The material facts in dispute are compelling: (1) whether there was probable cause for the stop (controverted deposition testimony); (2) whether the decedent-driver had impaired judgment (controverted deposition testimony); (3) whether there was destruction of physical evidence, namely, Officer Pickens' uniform (requested by Plaintiff but not produced); (4) whether there was a struggle for Officer Pickens' weapon (controverted deposition testimony); (5) whether two or more shots were fired (controverted deposition testimony); (6) whether Q-1 taken from decedent's body was fired from the service revolver on Officer Pickens' person on January 5, 2003 (controverted deposition testimony); (7) lighting conditions on January 5th, 2003 (controverted deposition testimony); (8) whether Defendants had any permission by Kansas authorities to pursue the vehicle across the state line into Kansas. (Rubenstein Deposition at page 48;7). These are the issues that have percolated into view through discovery including review of police reports, deposition transcripts, affidavits of the witnesses, expert examination, etc. These issues are ripe for determination by a fact-finder, cannot be adjudged as a matter of law, and make summary judgment inappropriate.

7

## DEFENSES NOT SUPPORTED BY LAW

Defendants essentially assert that "all of these claims depend on proving that defendant Praschak shot and killed James McNeal, Jr." (Defendant's Suggestions in Support of Motion for Summary Judgment at page 7-9). Further defendants argue that "even if plaintiff could satisfy the elements of her claims, the defendants' affirmative defenses of qualified immunity and self-defense show that judgment as a matter of law is appropriate…" See Defendants' Memorandum In Support of Motion for Summary Judgment, pg. 1).

First, Defendants', unarticulated but assumed, assertion that Plaintiff's claims necessarily require proving that defendant Praschak shot and killed James McNeal, Jr. misses the point. Rather, Plaintiff must show that in order for the Board of Police Commissioners to be liable that the (1) police officers acting under color of state law (2) while acting under routine custom or practice, (3) unlawfully deprived a citizen to be secure in his person. 42 U.S.C. §1983. For a cognizable claim to exist the law does not require under §1983 that the wrongdoing officer be a party to the lawsuit. (emphasis added). But rather, acting at the direction of a supervising authority and sanctioned by the Board of Police Commissioners that the officer deprived Plaintiff of his constitutional rights. Id. Essentially, the Board shall be liable under the statute if Plaintiff can demonstrate that officers, regardless whether they are parties to the suit, act under a widespread practice sanctioned by the board. Id.

In the case at bar, Defendants go to great lengths to argue that because the individually named officers have been dismissed or not named in the Complaint Plaintiff's claims necessarily fail. Indeed, Defendants remind the court in previous orders

8

the court dismissed various named defendants, including supervising officers True and Rubenstein, and Officer Pickens. (Defendants Suggestion at p. 7). However, nothing in the statutes or existing case law require that in order for a cognizable claim to exist under 42 U.S.C. §1983 that the individually named officers be parties to the lawsuit in order to hold the Board of Police Commissioners liable. Rather, Officers Rubenstein, True, Praschak and Pickens must simply be acting under color of state law, in accord with police routine practice and sanctioned by the entity to prevail on the claims.

In Plaintiff's previous amended petitions Plaintiff does include the individual acting officers as defendants. The court dismissed specific defendants in relevant part because, insufficient facts failed to establish a link between the individually named defendants and plaintiff's harm. Specific facts were not known to Plaintiff at the time of the filing of the 1st and 2nd amended petitions. Lagging discovery issues precluded certain probative and material facts from the Plaintiff. Indeed, Defendant's counsel affirmatively stated (see attached exhibit) that their office was not in possession of certain physical evidence, including officers' uniforms; alleged controlled substances taken from decedent's SUV; etc. However, since newly found information has been gleaned from Plaintiff's investigation, it is appropriate, just and legally permissible to add specific defendants back into the lawsuit. Indeed, the depositions of Officer Rubenstein and Officer Pickens just days after the court dismissed the parties from suit justify the additions. Fed.R.Civ. P. 15(c)(2) states that "an amendment of a pleading relates back to the date of the original pleading when…(2) the claim or defense asserted in the amended pleading arose of out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, ..…"

In the case at bar, Plaintiff previously named defendants True and Rubenstein as supervisors in the Kansas City Missouri Police Department and in direct authority over defendant Praschak and officer Pickens. They failed to adhere to pursuit guideline in effect and promulgated by the Board of Police Commissioners. Officer Rubenstein, in his sworn deposition, testified that he "failed to call off the pursuit" once the officers drove into Kansas, even though he had NO answer from the Kansas City Kansas Police Department. (Rubenstein deposition at p.43;22  48;7).

Kansas City Police Department Pursuits and Emergency Police Vehicle Operations reads in relevant part, Annex B: "Because of possible risks that may be associated with pursuit driving, all officers must recognize and accept the fact that a decision **not to pursue** may sometimes be the safest and most professional course of action.(emphasis added). (B) Factors of Pursuit include (1) seriousness of known violations or suspected crime, (2) weather and roadway conditions (3) volume and speed of other vehicular traffic, (3) presence of pedestrians (4) speed of pursuit, (5) type of areas, (6) familiarity of area by officer." (Def 0059). It is clear that all involved parties failed to adhere to their own prescribed pursuit policy. Rubenstein, as supervisor, offered guidance to the officers involved by radio and failed to direct the officers to abort the chase. (Rubenstein deposition at p. 75-88).

Since the filing of Plaintiff's previous amended petitions several probative factual determinations are necessary and cannot be decided at this stage of the litigation. Specifically, whether there existed probable cause for the initial stop. Officer Pickens and Defendant Praschak in sworn deposition testimony state that their reason for the stop was because decedent, McNeal, swerved, almost hitting another vehicle. (respective

depositions at p.86 ll.24 p.55: ll 8) However, this testimony is controverted by a least one of the eyewitnesses in the SUV. Tyrone Bates' sworn affidavit and deposition testimony completely contradict the officers' statements regarding swerving. (see attached affidavit). Bates also stated that he had driven with decedent on other occasions, seen the decedent intoxicated, and did not believe he was impaired. **Id** Further, the in camera police video does not show any traffic violations by the SUV. Indeed, the police video commences well after the pursuit ensued.

Defendants also assert that there was a struggle for officer Praschak's weapon. However, none of the produced physical evidence supports that assertion. Officer Praschak stated during his deposition that the standard uniform includes a flash light, utility belt, pepper spray, and weapon. (Praschak deposition at p. 46, L16) However, none of these items were found on the ground, having fallen, during the alleged struggle. Indeed, there was no evidence of scratches, fibers or skin under decedent's nails. (Kansas Bureau of Investigation Autopsy Report).

Also, Pickens states that he believed he fired two shots and they both hit McNeal. (Pretrial Order Stip. 35). Eye-witness testimony of Tyrone Bates states that only two shots were heard. (Bates Affidavit; Bates Deposition p. 77). These facts fly in the face of Officer Picken's reason "that he shot McNeal because he heard Officer Praschak's gun" accidentally discharge and thought he was at risk. Finally, a material question exists of which service revolver, if any, Officer Pickens used that night. (see Prashak Deposition at p.131 and Susan Lee KBI Ballistics deposition at p.17-19).

11

## **DEFENDANT'S AFFIRMATIVE DEFENSES NOT PROPER AT**

## **SUMMARY JUDGMENT**

Defendants correctly argue that "it is well established that a police officer may use deadly force in self-defense." **Gutierrez v. City of Hialeah**, 723 F. Supp 1494 (S.D Fla. 1989). However, self-defense is a matter to be decided at trial. In the case at bar, nothing but the officer's self-serving statements support that conclusion. First, decedent was not found with a weapon of any kind on his person or in the vehicle after search, incident to death. Second, neither Pickens nor Praschak observed a weapon or stated they did in their respective depositions. Third, there was at least one street light functioning during the time in question. Fourth, there is a question whether there were two or three shots fired and heard by witnesses. Fifth, no officer made any statement to dispatch, during the time of the incident, that decedent was believed to be armed. Only after months of careful reflection has the issue of self-defense been invoked. In fact, defendant asserts for the first time this defense. Officer Picken's uniform has never been produced, even after request, to demonstrate evidence of a struggle. Accordingly, self-defense is viable only when supported by the facts of the case and is a matter for jury determination on the ultimate facts. No reasonable officer acting in similar circumstances, without more, would shoot an unarmed man, for an alleged traffic offense, in a state where the officer was not licensed.

In analogous facts, the court examined whether qualified immunity affords defendants to prevail. In **Murphy v. Bitsolh**, 320 F.Supp 2d 1174, (7th Cir 2004), Defendants raise qualified immunity as a defense to allegations of excessive force. The Supreme Court, however, has frequently noted, "municipalities do not enjoy immunity

from suit — either absolute or qualified — under § 1983,"**Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit**, **507 U.S. 163** (1993), and the "only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses," **Hafer v. Melo**, **502 U.S. 21**, **24** (1991). The court applied the reasonableness inquiry and stated that it is objective and <u>heavily fact dependent</u>. **See, e.g., Wilson**, **52 F.3d at 1553**; (**Emphasis Added**).

The court also recognized that the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, . . .[and it] must embody allowance for the fact that police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving." **Graham**, **490 U.S. at 396-97**. "`[T]he reasonableness of [an officer's] actions depends both on whether [the officer was] in danger at the precise moment that . .. force [was used] and on whether [the officer's] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" **Allen**, **119 F.3d at 840** (quoting **Sevier v. City of Lawrence**, **60 F.3d 695**, **699** (10th Cir. 1995)). Accordingly, a court can consider both an officer's conduct at the time of the incident, and his or her "conduct prior to the suspect's threat of force," provided that "the conduct is immediately connected' to the suspect's threat of force." <u>Id</u>. (citations omitted). A court must pay careful attention to the totality of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer. **Id**. Accordingly, Defendant Praschak and Officer Pickens acted recklessly and their

13

deliberate conduct during the seizure unreasonably created the questionable need to use such force.'" **Allen** .

In the case at bar the facts have not changed. Decedent was not found with a weapon; Pickens or Praschak did not observe a weapon; no officer made any statement to dispatch that decedent was believed to be armed.  Assuming arguendo, that decedent had committed a traffic violation, pursuit should have been terminated at the Missouri/Kansas state line. Failure to adhere to their own department policy in effect at the time caused Plaintiff's injury.  Further, Officer Pickens nor defendant Praschak nor Officer Rubenstein could have known that McNeal had an active probation violation warrant at the time of the pursuit.   The facts are that the SUV was lawfully registered to a family member.  (Charon Porter Deposition).  Indeed, none of these facts were known to defendants at the time of the shooting.  Officer cannot now claim that there were issues of officer safety, because safety concerns should have prevented them from following decedent into another state. More egregious is the fact that officers failed to make ANY contact with Kansas authorities at ANY time during the 17 minute ordeal prior to the shooting. (Rubenstein deposition 48;7).   Thus, qualified immunity cannot be asserted with credibility.

## DEFENDANT'S ARGUMENTS ARE MOOT

On January 18, 2006, Plaintiff filed a Motion for Leave to Amend the Third Amended Complaint.  Plaintiff learned of the true shooter in this incident after filing her Third Amended Complaint.  Should the Court grant Plaintiff's motion, all of Defendants' arguments regarding Plaintiff's claims against Officer Praschak are moot.

## **CONCLUSION**

The weight to be given the evidence presented and the resolution of conflicts therein are questions that should be submitted to a jury. Defendants' actions caused Plaintiff's injuries. Genuine issues of material fact exist. A prima facie case has been made. The Court should deny Defendants' motion and allow the case to be presented to the trier-of-fact.

WHEREFORE, Plaintiff prays this Court enter an order denying Defendants' Motion for Summary Judgment, and grant such other relief that the Court deems fair and just to Plaintiff.

**CONNOR & RIVERS, LLC**

**s/Rebecca Rivers**
**Rebecca Rivers, MO#48629**
**Connor & Rivers, LLC**
**425 Washington, Suite 208**
**Kansas City, Missouri 64105**
**Telephone (816) 842-1507**
**Facsimile: (816) 842-2922**
**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I certify that a true and a correct copy of the foregoing Plaintiff's Response To Defendants' Motion For And Memorandum In Support Of Summary Judgment was electronically filed via CM/ECF on this 13th day of February, 2006, in the United States District Court of Kansas and a copy of same was sent, via CM/ECF, to:

Russell S. Jones Jr.
Patrick D. Martin
Shughart Thomson & Kilroy, P.C.
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, Missouri 64105

and

by United States mail, postage prepaid, to:

Kansas City, Missouri Police Department
Attn: Lisa Morris
1125 Locust
Kansas City, Missouri 64106.

                s/ Rebecca Rivers_____
                Attorney for Plaintiff

16