lml

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JOSEPHINE McNEAL,** | ) | |
| **Administrator of the Estate of** | ) | |
| **James McNeal, Jr., As Next Friend,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04-2149-JAR** |
| | ) | |
| **KARL ZOBRIST, in his official capacity** | ) | |
| **as Board President of The Board of** | ) | |
| **Police Commissioners of Kansas City,** | ) | |
| **Missouri, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This lawsuit arises from the January 5, 2003, shooting of decedent James McNeal, Jr. by

Officer John Pickens of the Kansas City, Missouri Police Department.  Plaintiff Josephine

McNeal is the administrator of the estate of James McNeal, Jr. as Next Friend.  Defendant

Christopher Praschak is an officer in the Kansas City, Missouri Police Department ("KCPD").

The remaining defendants are current or former members of the Kansas City, Missouri Board of

Police Commissioners ("the Board"), sued in their official capacities: Karl Zobrist, Javier M.

Perez, Angela Wasson-Hunt, James Wilson and Mayor Kay Barnes.  This matter is before the

Court on defendants' Motion for summary judgment (Doc. 116) on plaintiff's claims under 42

U.S.C. § 1983 and for outrage.  Defendants have also moved for attorney's fees pursuant to 42

U.S.C. § 1988 and sanctions pursuant to Fed. R. Civ. P. 11 (Doc. 115).  For the reasons

explained in detail below, defendants' motions are granted.

## I.    Uncontroverted Facts

At the outset, the Court notes that in response to defendants' motion for summary

judgment, plaintiff has failed to comply with the local rules that govern the summary judgment

process.  D. Kan. Rule 56.1 provides in relevant part:

> (1) A memorandum in opposition to a motion for summary
> judgment shall begin with a section that contains a concise
> statement of material facts as to which the party contends a
> genuine issue exists.  Each fact in dispute shall be numbered by
> paragraph, shall refer with particularity to those portions of the
> record upon which the opposing party relies, and, if applicable,
> shall state the number of movant's fact that is disputed.
>
> (2) If the party opposing summary judgment relies on any facts
> not contained in movant's memorandum, that party shall set forth
> each additional fact in a separately numbered paragraph, supported
> by references to the record. . . . [1]

The rule further states that "all material facts set forth in the statement of the movant *shall be*

*deemed admitted* for the purpose of summary judgment unless specifically controverted by the

statement of the opposing party."[2]  "The enforcement of this rule does not depend on the movant

filing an objection or showing prejudice from the opposing party's non-compliance."[3]  Plaintiff's

responses fail to meet the requirements of Rule 56.1.

Plaintiff does not specifically controvert most of defendants' material facts.  In the few

instances that she does attempt to controvert, plaintiff does not state her response with

particularity—several of plaintiff's attempts do not even speak to the fact raised by defendants.

Nor has plaintiff presented any additional factual contentions in separately numbered

---

[1]D. Kan. Rule 56.1(b).

[2]D. Kan. Rule 56.1(a).

[3]*Hartnett v. Parris*, 925 F. Supp. 1496, 1500 n.1 (D. Kan. 1996).

paragraphs; instead, she intersperses her factual contentions throughout her purported response to defendants' statement of facts.  The Court will not sift through plaintiff's disjointed narrative in an attempt to identify controverted facts.  "The very purpose of Rule 56.1 is to avoid such a misdirection of judicial resources.  Moreover, such an approach would vitiate the explicit sanction contained within the rule—the requirement that the facts which are not admitted or denied will be deemed admitted."[4]  Accordingly, pursuant to Rule 56.1, the facts presented in defendants' motion are deemed uncontroverted.[5]

The following facts set forth in defendants' summary judgment memorandum and that find support in the record, are uncontroverted:

### *Underlying Incident*

On January 5, 2003, Officer Praschek and his partner Officer John Pickens, a non-party,[6] ("the officers") were on duty patrolling the Central Patrol Division in Kansas City, Missouri.  Just before 2:00 a.m., the officers saw a Ford Explorer SUV swerve across lanes of traffic on Interstate 35 ("I-35") northbound, nearly hitting another car.  James McNeal, Jr. ("McNeal") was the driver of the SUV.  The officers believed that McNeal was intoxicated; in fact,  McNeal had been at the Stanford & Sons bar with friends before driving on the highway, and the autopsy report of McNeal showed that he had a blood alcohol content of 0.11 %, and that he had THC in

---

[4]*Joshua W. v. Bd. of Ed. of Wichita Pub. Sch. U.S.D. No. 259*, 13 F. Supp. 2d 1199, 1205 n.6 (D. Kan. 1998).

[5]The Court further notes that the majority of defendants' uncontroverted facts were stipulated to in the Pretrial Order (Doc. 98, ¶ 4).

[6]Officer Pickens was dismissed as a defendant without prejudice on January 25, 2005. (Doc. 46.)  In a separate order entered contemporaneously with this one, the Court denied plaintiff's motion for leave to amend the Complaint for a fourth time to reassert a section 1983 claim against Officer Pickens.

his system.[7]

The officers caught up to McNeal and his two passengers near I-35 and Broadway in Kansas City, Missouri.  McNeal was wanted for probation or parole violations and had absconded from the Kansas Department of Corrections.  The officers turned on their vehicle emergency lights and sirens to stop McNeal.  The SUV did not stop, and the occupants later admitted to plaintiff that they were trying to get away from the police.

Officer Pickens radioed the KCPD's dispatcher that the officers were in pursuit of the SUV.  The officers pursued the SUV from Kansas City, Missouri into Kansas City, Kansas.  Officer Pickens radioed the KCPD dispatcher to arrange for help from the Kansas City, Kansas Police Department.  The officers' sergeant, James Rubenstein, a non-party,[8] similarly requested that the dispatcher call for help from the Kansas City, Kansas Police Department.  The KCPD dispatcher called for help in the pursuit of McNeal from the Kansas City, Kansas Police Department.  Sergeant Rubenstein requested that the Kansas City, Kansas Police Department deploy "stop sticks" to stop the SUV.

During the pursuit, McNeal and his passengers discussed that their best option to get away from the officers was to jump out of the SUV and run away on foot.  The officers continued to follow the SUV to a school in Kansas City, Kansas, where the SUV stopped and its occupants jumped out and began to run away on foot.  Officer Pickens chased the two passengers and Officer Praschak chased and attempted to arrest McNeal.  McNeal had fallen beyond a wire

---

[7]Tetrahydrocannabinol is the primary intoxicant in marijuana.

[8]Sergeant Rubenstein was dismissed as a defendant on July 25, 2005 (Doc. 73), because the statute of limitations had run on plaintiff's section 1983 claim against him.  In a separate order, the Court also denied plaintiff's motion for leave to amend the Complaint for a fourth time to reassert a section 1983 claim against Sergeant Rubenstein.  *See* n.6, *supra*.

that stretched across an alleyway.  Officer Praschak had his gun drawn.  McNeal jumped up from the ground, lunged toward Officer Praschak and began to struggle with him.  McNeal grabbed Praschak's gun hand, and thrust it into the air.  While Officer Praschak was trying to retain his gun, his elbow hit McNeal's shoulder and a shot was fired.  Officer Praschak fell to the ground and McNeal started running toward Officer Pickens, who had heard the shot and turned back toward where he had last seen Officer Praschak.  Officer Pickens believed that McNeal had just shot his partner and was coming to attack him.  He could not see McNeal's hands because McNeal had them tucked up under his chest, near the middle of his body.  Officer Pickens testified that he "thought I was going to get killed."  He yelled at McNeal to "get down," but McNeal did not stop running at Officer Pickens.  Officer Pickens fired his gun twice at McNeal, who fell to the ground.  Officer Pickens called for medical assistance for McNeal within seconds of shooting his gun.  McNeal's passenger, Tyrone Bates, "did not see anything," and was "super surprised" to hear later what had transpired with McNeal.  According to the medical examiner, McNeal died "as a result of two gunshot wounds, one of which strikes central organs of the chest."

Plaintiff testified that she does not think Officer Praschak intended her any harm.

### Investigation

The Kansas Bureau of Investigation analysis of the bullet that struck the central organs of McNeal's chest revealed that it came from Officer Pickens's gun.  Plaintiff acknowledges in the final Pretrial Order that "James McNeal, Jr. died as a result of gunshot wounds inflicted by Officer Pickens."[9]  The Wyandotte County District Attorney's Office reviewed the Kansas City,

---

[9](Doc. 98 at ¶ 5(a)(4).)

Kansas Police Department's investigation of this matter and issued a "considered opinion that the Kansas City, Missouri police officers were completely justified in the use of force that resulted in the death of James McNeal."

## II.    Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[10]  A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[11]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[12]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[13]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[14]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[15]  The burden may be met by showing that there is no evidence to support

---

[10]Fed. R. Civ. P. 56(c).

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12]*Id.*

[13]*Id.* at 251–52.

[14]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

the nonmoving party's case.[16]  If this initial burden is met, the nonmovant must then "go beyond

the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the nonmovant."[17]  When examining the

underlying facts of the case, the Court is cognizant that it may not make credibility

determinations or weigh the evidence.[18]

## III.   Analysis

### A.   Section 1983 Claims

#### 1.   Officer Praschak

Section 1983 authorizes the recovery of damages against any person acting under color

of state law who deprives an individual of a constitutional right.[19]  As such, it permits a plaintiff

to recover damages against individual police officers who knowingly violate a plaintiff's

constitutional rights through the willful use of excessive force.  Plaintiff makes two § 1983

claims against Officer Praschak in her Third Amended Complaint: Count I, for excessive force

and Count II, for violation of bodily integrity.  Both claims against Officer Praschak are founded

on the assertion that McNeal died as "a direct and proximate cause of Defendant Praschak's

unlawful shooting."[20]

Defendants contend that it is undisputed that Officer Praschak did not shoot McNeal.

Claims brought pursuant to § 1983 seek relief for deprivations of federally secured rights.  To

---

[16]*Id.*

[17]*Id.* (quoting Fed. R. Civ. P. 56(e)).

[18]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[19]42 U.S.C. § 1983.

[20](Doc. 61 at ¶¶ 40, 46.)

prevail on her § 1983 claims, plaintiff "must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under the color of state law."[21]  Plaintiff cannot establish this essential element in her claim against Officer Praschack because he did not shoot McNeal—Officer Pickens did.  Plaintiff acknowledges as much in the Pretrial Order and the uncontroverted facts in the record show that Officer Praschak did not shoot McNeal.  Officer Pickens testified that he shot at McNeal when McNeal was running at him.  The Kansas Bureau of Investigation analysis of the bullet that killed McNeal shows that it came from Officer Pickens's gun.  Thus, there is no genuine issue of material fact as to whether Officer Praschak caused McNeal's death.  Because causation is a necessary element of plaintiff's § 1983 claims against Officer Praschak, he is entitled to judgment as a matter of law.

Assuming, *arguendo*, that plaintiff had correctly asserted in her Third Amended Complaint that Officer Pickens had in fact shot McNeal, plaintiff's claims would be defeated on the basis of qualified immunity.  Qualified immunity protects police officers from liability when acting within the scope of their employment.  "[G]overnment officials performing discretionary functions generally are shielded from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[22]  Qualified immunity provides government officials immunity from suit as well as

---

[21]*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  *See generally Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999).

[22]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

from liability for their discretionary acts.[23]

The Supreme Court has established a two-part approach to determine if qualified immunity applies.  "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."[24]

In *Graham v. Connor*,[25] the Supreme Court held that a claim of excessive use of force by police officers should be analyzed under the Fourth Amendment's objective reasonableness standard.[26]  Under this standard, the reasonableness of an officer's use of force must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[27]  The Court explained that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving . . . about the amount of force that is necessary in a particular situation."[28]

The Fourth Amendment standard of objective reasonableness requires inquiry into the

---

[23]*Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir. 1988).

[24]*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998)).

[25]490 U.S. 386 (1989).

[26]*Id.* at 397; *Reindl v. City of Leavenworth, Kan.*, — F. Supp. 2d —, 2006 WL 2258268, *4 (10th Cir. Apr. 18, 2006).

[27]*Graham v. Connor*, 490 U.S. at 396.

[28]*Id.* at 396-397 (internal citations and quotations omitted).

factual circumstances of each case.  Relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and other's safety, and the suspect's attempts to resist or evade arrest.[29]  Because the reasonableness inquiry overlaps with the qualified immunity analysis, "a qualified immunity defense [is] of less value when raised in defense of an excessive force claim."[30]  Whether an officer acted reasonably in using deadly force is "heavily fact dependent."[31]

Even if plaintiff could show that Officer Pickens's conduct violated McNeal's constitutional rights, the officer would be protected by qualified immunity because his actions were "objectively reasonable."  In this case, the uncontroverted material facts demonstrate that Officer Pickens believed that McNeal had just shot his partner, Officer Praschak, and was coming to kill him.  The record demonstrates that McNeal had fled the officers, both in his SUV and on foot; Officer Pickens heard a gunshot; he saw his partner on the ground; McNeal was running directly at Officer Pickens; he could not see McNeal's hands; McNeal did not comply with his commands to stop; McNeal was very close to Officer Pickens; and he only had a split-second to respond.  In light of these facts, because Officer Pickens's belief that McNeal had shot Praschak and was going to kill him was objectively reasonable, it was objectively reasonable for Officer Pickens to shoot McNeal.  Officer Pickens's actions are protected by qualified immunity.

Finally, the Court addresses plaintiff's claim that there are genuine issues of material fact

---

[29]*Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).

[30]*Id.* (citing *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991)).

[31]*Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 705 n.5 (10th Cir. 1995) (quoting *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995)).

in this case that preclude summary judgment on the excessive force claim, *i.e.*, whether there was probable cause for the officers to pursue the vehicle, whether McNeal had impaired judgment, and whether the officers had permission from Kansas authorities to pursue the SUV across the state line.  None of these issues are material to plaintiff's excessive force claims that are the basis of this § 1983 action.  Plaintiff does not bring a wrongful pursuit claim, which would also fail as a matter of law because the officers' authority to pursue a DUI suspect across state lines is statutory.[32]

Plaintiff also asserts without any support whatsoever, that there are issues of material fact regarding whether there was a struggle for Officer Pickens's weapon, whether two or more shots were fired, the lighting conditions and whether Officer Pickens's uniform was destroyed.  These bald assertions are made as argument in plaintiff's brief in opposition to summary judgment; as previously discussed, she failed to present any additional factual contentions in separately numbered paragraphs as required by Rule 56.1.  Finally, other statements by plaintiff are plainly erroneous or contrary to the record.  Plaintiff asserts that the officers failed to make any contact with Kansas authorities at any time during the seventeen minute ordeal prior to the shooting.  In fact, plaintiff stipulated in the Pretrial Order that Officer Pickens radioed his dispatcher to arrange for help from the Kansas City, Kansas Police Department, that the officers' sergeant radioed dispatch for help from the Kansas City, Kansas Police Department, and that the dispatcher did in fact call the Kansas City, Kansas Police Department.[33]

Defendants' motion for summary judgment is granted on plaintiff's § 1983 claim against

---

[32]Mo. Rev. Stat. § 544.155; K.S.A. § 22-2404.

[33](Doc. 98 at ¶ 4, facts 17, 18, 19.)

Officer Praschak.

## 2.      Board of Police Commissioners

Plaintiff makes a single claim against the individual members of the Board, in their official capacity, for "failure to instruct, train, supervise, control, and discipline," under § 1983. To establish liability under § 1983 for excessive force caused by inadequate training, supervision or discipline of officers, the plaintiff must show the following elements: (1) that the officers exceeded constitutional limitations on the use of force; (2) that the use of force arose under circumstances that constituted a usual and recurring situation with which detention officers must deal; (3) that a defendant's inadequate training, supervision or discipline demonstrated a deliberate indifference on the part of the defendant toward persons with whom the officers come into contact; and (4) that there is a direct causal link between the constitutional deprivation and the inadequate training, supervision or discipline.[34]  Plaintiff's claim fails for several reasons.

First, absent an underlying constitutional violation, defendant Board members cannot be liable under § 1983.[35]  The Court has determined that Officer Praschak did not violate plaintiff's constitutional rights, and plaintiff does not allege that Officer Pickens committed a constitutional violation.  This Court previously considered the import of plaintiff's claims against Officer Pickens in the context of her First Amended Complaint.  In dismissing Officer Pickens, the Court stated that "the specific allegations of Counts I through IV are not attributable to Defendant Pickens."[36]  The Court also stated that it "will not create a cause of action against Defendant

---

[34]*Reindl v. City of Leavenworth, Kan.*, — F. Supp. 2d —, 2006 WL 2258268, *5 (10th Cir. Apr. 18, 2006) (citations omitted).

[35]*See Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 782 (10th Cir. 1993).

[36](Doc. 46 at 6.)

Pickens where one is not alleged.  To the extent Plaintiff intended to state a claim for a constitutional violation against Defendant Pickens, the allegations of the amended complaint are insufficient."[37]  Nevertheless, even if plaintiff had asserted constitutional violations against Officer Pickens, the Court has determined that he is protected by the qualified immunity defense. Thus, there is no underlying constitutional violation in this case upon which to base the defendant Board members' liability.

Second, plaintiff relies on a single incident of excessive force to support her claim. In such cases, the Tenth Circuit requires expert testimony about what the appropriate training or instruction for use of deadly force should have been.[38]  Plaintiff's failure to provide any expert testimony also renders summary judgment appropriate on this issue.[39]

Third, as this Court has previously held, because plaintiff's § 1983 suit is against the defendant Board members in their official capacities, it must be treated as a suit against the municipality.[40]  A municipality can be liable only where the municipality itself caused the violation.[41]  This requires a showing of a direct causal link between a county policy or custom and the constitutional violation itself.[42]  The failure of a municipality to adequately train, supervise or discipline its police officers regarding the use of excessive force, as alleged by

---

[37]*Id*. at 6-7.

[38]*Brown v. Gray*, 227 F.3d 1278, 1287 n.3 (10th Cir. 2000).

[39]*Nelson v. City of Wichita, Kansas*, 217 F. Supp. 2d 1179, 1186 (D. Kan. 2002).

[40](Doc. 60, at 12.)

[41]*Lewis v. Bd. of Sedgwick County Com'rs*, 140 F. Supp. 2d 1125, 1132 (D. Kan. 2001) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

[42]*Id*.

plaintiff, may qualify as a municipal "custom" or "policy" only where a showing is made that the county's program is inadequate in such a manner that evinces a "deliberate indifference" on the part of the municipality's policymaker to the constitutional rights of persons with whom the officers come into contact.[43]  Plaintiff cites to the KCPD Pursuits and Emergency Police Vehicle Operations policy, and asserts that the officers involved failed to adhere to pursuit guidelines in effect because the supervising officer, Sergeant Rubenstein, "failed to call off the pursuit" once the officers crossed the state line into Kansas.  In the Pretrial Order, however, plaintiff states that her claim against the defendant Board members arises out of allegedly failing to train its officers not to use excessive force.[44]  There is nothing in the record before the Court regarding KCPD's policies and training regarding the use of force.

Finally, in order to prevail, plaintiff must show that the complained of policy is directly connected as the "moving force" behind the constitutional violation—in this case, the shooting of McNeal.[45]  Plaintiff has not established that McNeal was shot and died as a direct result of KCPD's policy or training regarding use of force.  Nor for that matter, does she establish that McNeal died as a result of the policy she does cite, that of allowing police vehicles to cross state lines.  Plaintiff has not demonstrated that a direct causal link exists between any KCPD policy and the shooting.

Accordingly, plaintiff's § 1983 claim against defendant Board members is without merit, and summary judgment is granted on this claim.

---

[43]*Id.*

[44](Doc. 98 at 18-19.)

[45]*Reindl v. City of Leavenworth, Kan.*, — F. Supp. 2d —, 2006 WL 2258268, *5 (10th Cir. Apr. 18, 2006) (citations omitted).

### B.     Outrage

Plaintiff also brings a claim against Officer Praschak for "outrage,"[46] alleging that "defendants' [sic] conduct of killing James McNeal, Jr. proximately caused his family and Plaintiff the emotional distress of losing their only son to an extreme and unwarranted act of violence."[47]   Plaintiff claims that the emotional distress suffered by plaintiff and immediate family of McNeal was extreme and severe and caused several of them to engage in psychotherapy and grief counseling, and that they began taking psychotropic medication. Defendants contend that plaintiff's claims are not supported in law or fact.  Plaintiff does not respond nor address the claim of outrage in her response to defendants' motion for summary judgment.

Under Kansas law, when the tort of outrage is asserted, two threshold requirements must be met.  The court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and (2) whether the emotional distress suffered by the plaintiff is of such extreme degree that law must intervene because no reasonable person should be expected to endure it.[48]   In order for conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.[49]

---

[46]Outrage is also known as intentional infliction of emotional distress.  *See Roberts v. Saylor*, 637 P.2d 1175, 1178 (Kan. 1981).

[47](Doc. 98 at 20.)

[48]*McGregor v. City of Olathe, Kansas*, 158 F. Supp. 2d 1225, 1242 (D. Kan. 2001) (citing *Fusaro v. First Family Mortgage Corp.*, 897 P.2d 123, 131 (1995)).

[49]*Id.* (citing *Taiwo v. Vu*, 822 P.2d 1024, 1029 (1991)).

Viewing the evidence in the light most favorable to plaintiff, the Court finds that the emotional distress allegedly suffered by plaintiff falls far short of the degree necessary to support her claim.  Plaintiff, the administrator of McNeal's estate, has admitted that she does not think Officer Praschak intended her any harm.  There is no evidence in the record before the Court that McNeal suffered any mental distress, much less extreme and severe distress.  Plaintiff's claim also seeks to recover damages suffered by McNeal's immediate family members, none of whom are currently plaintiffs in this case.[50]  There is no evidence whatsoever in the record before the Court regarding these family members and their alleged emotional distress.  Because the Court finds that plaintiff has failed to establish that plaintiff suffered severe emotional distress, it need not determine whether Officer Praschak's conduct was outrageous.  Nevertheless, the Court reiterates that plaintiff has admitted, indeed stipulated, that Officer Pickens—not Officer Praschak—shot McNeal.

## C.    Attorney's Fees

Attorney's fees are available to a successful party in a claim brought under §§ 1983 and 1981.[51]  Stringent standards must be met, however, before a court may award attorney's fees to a prevailing defendant.[52]  An award is not justified merely because the plaintiff ultimately lost his case.  Indeed, the court is to "resist the understandable temptation to engage in *post hoc*

---

[50]McNeal's family members, Charon Porter, James McNeal III, Jaron McNeal, James McNeal, Sr., and Josephine McNeal were named as plaintiffs in the original complaint.  Plaintiffs were granted additional time to open an estate and file an amended complaint (Doc. 17.)  Charon Porter and James McNeal, Sr. were terminated as parties, and James McNeal, III and Jaron McNeal were dismissed from the lawsuit on January 25, 2005 (Doc. 46).

[51]42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of sections 1981 . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . .").

[52]*Roe ex rel. Roe v. Keady*, No. 00-2232-CM, 2002 WL 1461970, *1 (D. Kan. June 18, 2002) (citing *Figures v. Bd. of Pub. Utils. of Kan. City, Kan.*, 967 F.2d 357, 363 (10th Cir. 1992)).

reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[53]  Thus, when a defendant prevails, he "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."[54]

In deciding whether the plaintiff's claims are frivolous, unreasonable or groundless, the court must examine their merits.[55]  This inquiry is the same as that used in deciding if sanctions should be imposed under Rule 11.[56]  For the reasons set forth in detail below, defendants' motion for attorney's fees pursuant to § 706(k) is granted.

### D.     Rule 11 Sanctions

Fed. R. Civ. P. 11(b) states in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[53]*Id.* (quoting *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1978)).

[54]*Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983)).

[55]*Crabtree by and through Crabtree v. Muchmore*, 904 F.2d 1475, 1478 (10th Cir. 1990).

[56]*Id.*

> (3) the allegations and other factual contentions have evidentiary
> support or, if specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for further
> investigation or discovery; . . . .

The standard for Rule 11 sanctions is an objective one.[57]  Likewise, subjective bad faith is not required to trigger Rule 11 sanctions.[58]  Within this context, it is not enough that an attorney has a subjective, good faith belief than an argument has merit.[59]  Rather, the attorney's belief must be "in accord with what a reasonable, competent attorney would believe under the circumstances."[60]  The court enjoys discretion in determining whether a claim or argument is reasonable.[61]  Imposition of sanctions is mandatory, however, once it is determined that a Rule 11 violation has occurred.[62]  "[T]he primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit."[63] The amount of sanctions must be the minimum amount necessary to deter future violations.[64] The Court notes that pursuant to Rule 11(c)(1)(A), defendants gave plaintiff at least twenty-one days notice before filing their motion for sanctions, but counsel for plaintiff chose not to

---

[57]*Medical Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1332 (D. Kan. 2006) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) ("A good faith belief in the merits of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.")).

[58]*Id.* (citing *Burkhart ex rel. Meeks v. Kinsley Bank*, 804 F.2d 588, 589 (10th Cir. 1986)).

[59]*Scott v. Boeing Co.*, 204 F.R.D. 698, 700 (D. Kan. 2002) (citation omitted).

[60]*White*, 908 F.2d at 680.

[61]*Augustine v. Adams*, 88 F. Supp. 2d 1166, 1174 (D. Kan. 2000) (citation omitted).

[62]*Id.* (citations omitted).

[63]*White*, 908 F.2d at 684.

[64]*See id.* at 684-85.

18

withdraw the Third Amended Complaint.

In the Third Amended Complaint, plaintiff alleges that Officer Praschak used excessive force against McNeal and subjected him to an unreasonable bodily intrusion by shooting him, causing his death; that the Board members failed to instruct, supervise, control and discipline Officer Praschak; that Captain True and Sergeant Rubenstein failed to properly supervise Officers Pickens and Praschak in the performance of their duties; and that the outrageous conduct of all named defendants caused plaintiff and the immediate family of McNeal to suffer severe emotional distress.  There were no claims asserted against Officer Pickens, who was dismissed without prejudice on January 25, 2005.[65]  On July 25, 2005, this Court dismissed defendants True and Rubenstein because the statute of limitations had run.[66]

Defendants claim that plaintiff's counsel violated Rule 11(b)(2) because after reasonable inquiry, counsel should have known that plaintiff's claims against Officer Praschak and the Board members were untenable under both fact and law.  Rule 11(b)(2) requires an attorney to file a claim or other legal contention only if it is "warranted by existing law" or it is a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."[67]  Defendants allege that no attorney could have reasonably believed that a valid claim could have been presented against defendants based on the facts in the record, specifically, the fact that Officer Pickens, not Officer Praschak, shot McNeal.

Plaintiff responds that the motion for leave to file a fourth amended complaint renders

---

[65](Doc. 46.)

[66](Doc. 73.)

[67]Fed. R. Civ. P. 11(b)(2).

defendants' motion moot.  While plaintiff admits that the Third Amended Complaint contains some "'facts' that may not be accurate," she accuses defendants of "actively thwarting" her efforts to make a reasonable pre-filing investigation, and contends that Rule 11 does not apply to discovery issues.  Finally, plaintiff asserts that she was bullied by defendants' counsel, Russell Jones.

        After reviewing the parties submissions as well as the court file, it is apparent to the Court that counsel did not conduct a reasonable inquiry into the facts and law before filing the Third Amended Complaint.  During the twelve-month period between the filing of the original complaint and the Third Amended Complaint, plaintiff's counsel failed to request production of documents, serve interrogatories or notice and take depositions.  It appears that she also failed to review the Kansas City, Kansas Police Department's record, some of which was available to the public, or defendants' Rule 26 disclosures.  All of these avenues would have yielded information demonstrating that many of plaintiff's key factual assertions were without foundation.  For example, the Kansas City, Kansas Police Department records show that Officer Pickens shot McNeal, not Officer Praschak and that the officers asked Kansas City, Kansas police to assist in the pursuit.  Plaintiff's § 1983 and outrage claims against Officer Praschak are untenable because, as plaintiff's counsel stipulated in the Pretrial Order, McNeal died as a result of gunshot wounds inflicted by Officer Pickens.  Further, none of McNeal's family members are plaintiffs in this case; even if they were, plaintiff testified in her deposition that none actually engaged in psychotherapy or took psychotropic medication as a result of their severe emotional distress, as alleged.[68]  Finally, in her § 1983 claim against the Board members, plaintiff did not plead a series

---

[68](Doc. 115, Ex. D at 35, 89.)

of incidents of excessive force by the KCPD, and failed to identify an expert to testify about training procedures, as required to prevail.

When plaintiff's counsel was made aware of evidence that flatly contradicted material averments in the Third Amended Complaint, she did not correct any of her filings with the Court.  Instead, she moved for leave to amend to file a Fourth Amended Complaint to reassert claims against Officer Praschak and Sergeant Rubenstein, who had previously been dismissed from the case.  As the Court has ruled in its separate order denying plaintiff's motion to amend, adding these defendants back into the case would be futile, as plaintiff's claims against both are barred by the statute of limitations.  Moreover, such an attempt runs contrary to Rule 11's purpose of causing attorneys to "stop, look, and listen *before* signing a document subject to Rule 11."[69]  Nothing in plaintiff's response counters the fact that plaintiff asserted material facts and legal claims in her Third Amended Complaint without conducting a reasonable pre-filing investigation.  Plaintiff's efforts to blame defendants for "actively thwarting" her efforts is without merit.  Plaintiff fails to explain how defendants prevented her from investigating facts relative to her own family and their alleged psychiatric care or how defendants prevented her from reviewing materials, including public reports, that were in the possession of the Kansas City, Kansas Police Department.[70]  Finally, the Court is not persuaded that Mr. Jones's meeting with plaintiff's counsel was anything more than an attempt to do what Rule 11 requires, that is, giving plaintiff an opportunity to withdraw her Third Amended Complaint and avoid the possibility of sanctions.

---

[69]*Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988) (emphasis added).

[70]This Court has previously held that "many of Plaintiff's discovery requests are items not in the control of Defendants." (Doc. 111, Order denying plaintiff's motion to compel.)

The Court finds that plaintiff's counsel failed to conduct a reasonable inquiry into the facts and law asserted in the Third Amended Complaint, and that no reasonable, competent attorney could have believed that a valid claim could have been presented against defendants based on the facts in the record.  Plaintiff's counsel unreasonably failed to inquire as to whether plaintiff's claims were warranted by existing law or by a nonfrivolous argument for the modification or reversal of existing law.  Such conduct violates Rule 11 and sanctions are necessary to deter future similar conduct.  Having granted the motion for summary judgment, the Court denies defendants' request for dismissal of the Complaint as a sanction.  Instead, defendants' costs and reasonable attorney's fees will serve as a guide for the Court in determining the amount of sanctions.  Accordingly, counsel for defendants is ordered to submit a full accounting of their attorney's fees and costs associated with defending this suit since the filing of the Third Amended Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 116) is GRANTED;

**IT IS FURTHER ORDERED BY COURT** that defendants' request for attorney's fees (Doc. 116) and Motion for Sanctions (Doc. 115) are GRANTED; counsel for defendants shall submit a full accounting of their attorney's fees and costs associated with defending this suit since the filing of the Third Amended Complaint within twenty (20) days of the date of this Order.

IT IS SO ORDERED.

Dated this  18th  day of September 2006.

 S/ Julie A. Robinson                           
Julie A. Robinson

United States District Court Judge